**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**


**CIVIL ACTION NO. 07-354-JBC**

**ALLSTATE INSURANCE COMPANY,**                                                    **PLAINTIFF,**

**V.**                            **MEMORANDUM OPINION AND ORDER**

**GEORGE DANIEL STRONG,**                                                **DEFENDANT.**

**\* \* \* \* \* \* \* \* \* \***

This matter is before the court upon the plaintiff's motion for summary judgment (R. 38) on the defendant's bad-faith counterclaim.  The court, having reviewed the record and being otherwise sufficiently advised, will grant the motion.

Also pending are the plaintiff's motions to exclude proposed expert witnesses (R. 28) and for an extension of time to disclose bad-faith experts (R. 31). The court will deny as moot as much of the motions as relate to the bad-faith claim and will deny the remainder of the motion to exclude.

**I.      Background**

On March 4, 2007, a home owned by George Daniel Strong, the defendant, burned down.  Strong maintained a homeowner's insurance policy with the plaintiff, Allstate Insurance Company ("Allstate"), and subsequent to the fire, he filed a claim for the proceeds of that policy.  After investigating the claim, Allstate suspected that the fire was a result of arson and that Strong had played a role in burning down the house.  On October 19, 2007, Allstate petitioned this court for a

declaration that it has no obligation under the policy to pay Strong.  In his answer

and first amended counterclaim, Strong alleges that Allstate denied his claim in bad

faith.  R. 5, R. 18.  Allstate moved for summary judgment on the counterclaim on

December 30, 2008.  R. 38.  Strong did not respond to Allstate's motion.

## II.    Legal Standard

Summary judgment is appropriate only when there are no genuine issues of

material fact and the moving party is entitled to a judgment as a matter of law.

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party can satisfy its

burden by demonstrating an absence of evidence to support the non-movant's

case.  *Id*. at 324-25.  To survive summary judgment, the non-movant must come

forward with evidence on which a jury could reasonably find in its favor.  *Anderson*

*v. Liberty Lobby, Inc*., 477 U.S. 242, 252 (1986).  The non-movant must present

more than a mere scintilla of evidence to defeat a motion for summary judgment.

*Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989); Fed. R. Civ.

P. 56(e).  The court must view all of the evidence in the light most favorable to the

party opposing summary judgment.  *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).

A court cannot grant a motion for summary judgment simply because it is

unopposed.  *See Rance v. Datavantage, Corp.*, No. 06-CV-335, 2008 WL 1899986

(N.D. Ohio April 28, 2008) (citing *Sutton v. United States*, 1991 WL 590, at *2 n.

1 (6th Cir. 1991)).  Rather, the court must examine the motion to determine

whether the moving party has satisfied its burden. *Id.* However, "the trial court is under no obligation to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* (quoting *In re St. Clair Clinic, Inc.*, 1996 WL 6531, at *2 (6th Cir.1996)). The court may rely upon the facts presented by the moving party. *See id.* (citing *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 404-05 (6th Cir. 1992)).

**III.    Analysis**

**A.    Motion for Summary Judgment on Bad-Faith Claim**

In his counterclaim, Strong contends that Allstate violated the Unfair Claims Settlement Practices Act ("UCSPA"), KRS § 304.12-230, by wrongfully refusing to pay for the loss of his home and by making allegations that he was responsible for the fire which destroyed it.  While an insurer has a duty to engage in fair claims-settlement practices, it "is entitled to challenge a claim and litigate it if the claim is debatable on the law or the facts." *Id.*; *see also* 14 Couch on Insurance § 207:15 (2008) ("The mere fact that the insurer has chosen to litigate coverage does not subject it to statutory bad faith penalties, provided that it has reasonable grounds for contesting payment.").  In order to prevail under the UCSPA, an insured must prove that (1) the insurer has an obligation to pay the claim under the terms of the policy; (2) the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Wittmer v.*

3

*Jones*, 864 S.W.2d 885, 890 (Ky. 1993).  Strong cannot meet this burden.

Allstate argues that it did not violate the UCSPA because it had a reasonable basis for believing that Strong burned his home, which justifies its decision to contest coverage.  The insurance policy states:

> We do not cover loss to the property . . . consisting of or
> caused by . . . [i]ntentional or criminal acts of or at the
> direction of any insured person, if the loss that occurs: a)
> may be reasonably expected to result from such acts; or
> b) is the intended result of such acts.

R. 38-9 at 15-16.   Allstate has provided ample evidence to support its belief that Strong was involved in causing the fire that destroyed his home.

"In a civil trial, the proponent of an arson theory must show evidence of motive, opportunity and the use of an incendiary device."  *Arms v. State Farm Fire and Casualty, Co.*, 731 F.2d 1245, 1249 (6th Cir. 1984).  However, this evidence may be circumstantial in nature.  *Twin City Fire Ins. Co. v. Lonas*, 75 S.W.2d 348, 350 (Ky. 1934).  Allstate is not required to prove that Strong committed arson in order to prevail on the "bad faith" claim.  Instead, Allstate needs to show only that it had reasonable grounds for believing that Strong committed arson or directed someone to commit arson.

Allstate had a reasonable basis to believe that an incendiary device was used to burn Strong's house.  After extinguishing the fire, Roger Friley, chief of the Jackson Fire Department, noticed burn patterns inside the house and on the back patio that were consistent with a chemical accelerant being poured and ignited.  R.

38-10 at 3; R. 38-11.  Friley then contacted James Burnett, an arson investigator with the Kentucky State Police, who saw the pour patterns and discovered smaller "spot burns" on the steps leading upstairs.  R. 38-12 at 4-5.  Both Friley and Burnett believed that the fire was the result of arson.  R. 38-10 at 4-5; R. 38-12 at 6; R. 38-13.  In addition, Paul Gray, Allstate's independent fire investigator, agreed with Burnett and Friley's conclusion that "[t]he cause of this fire was incendiary." R. 38-16 at 6.

Allstate also had a reasonable basis for its belief that Strong had a motive to burn down his house.  While Strong and his wife began experiencing financial problems soon after the home was purchased, those troubles increased substantially in 2006.  At that time, Strong received approximately $2,500 per month from his pension.  R. 38-3 at 16.  He also earned $3,000 per year as a member of the Breathitt County Board of Education.  *Id.* at 17.  Strong previously earned income from a $55,000 certificate of deposit ("CD"), but, in the fall of 2006, he cashed it.  *Id.* at 14, 17.  He used $30,000 from the CD to pay down part of the mortgage debt.  *Id.* at 14.  He also gave $15,000 to $20,000 to his wife.  *Id.* at 14.  Shortly after cashing the CD, Strong and his wife separated, and Barbara Strong moved out of the house.  *Id.* at 15.  She then executed a deed of conveyance that gave her interest in the home to her husband so that she would not be burdened with the debt.  R. 38-4 at 5-6.  Thus, Strong was solely responsible for paying the mortgage, and Barbara no longer provided any income to

help pay for the house.  After the couple separated, Strong also began to pay $349 per month in child support to Barbara.  *Id.* at 3.

Strong's daughter, Stephanie Bowling, and her son lived in the home that was burned.  R. 38-7 at 5.  Stephanie agreed to pay $400 per month in rent.  R. 38-3 at 21.  However, according to Strong, "she paid it when she could; and when she couldn't, I didn't say anything."  *Id.* at 21.

At the same time that Strong's income was declining, his house-related expenses were increasing.  In order to finance the house, the Strongs had obtained a loan from Citizens Bank & Trust of Jackson ("the bank").  R. 38-3, at 18; R. 38-5.  In exchange for the loan, they issued a mortgage to the bank, which permitted the bank to increase the interest rate by as much as two percentage points each year.  R. 38-5, at 1.  Initially, the interest rate was 3.75%, and the Strongs paid $934.19 per month.  After the first year of the mortgage, the interest rate began to rise.  Consequently, the Strongs' monthly payments increased to $1,197.05 in 2005 and $1,443.37 in 2006.

Strong's declining financial condition and the rising mortgage payments provide evidence to support Allstate's belief that he had a motive to burn down the house.  Allstate's belief is also supported by the fact that Strong did not need the house.  Strong's primary residence was at his mother's home in Whick, Kentucky, and he spent only a few nights a week at his house.  R. 38-3 at 4; R. 38-7 at 5-6.  Furthermore, his daughter was planning on getting married and felt that the house

was too big for her and her son.  R. 38-7 at 9.  The lack of need for the house

along with the financial burden that it created provide sufficient reasons to support

Allstate's belief that Strong had a motive to burn the home.

In addition, Allstate provided evidence to show that Strong was the only

person to have a motive to burn the home.  When he investigated the fire,

Detective Burnett initially considered several suspects, including Strong, his ex-

wife, and her boyfriend, Joshua Taulbee, but he quickly eliminated Strong's ex-wife

and Taulbee as suspects.  R. 38-12 at 11 and 14.  Furthermore, neither Barbara

Strong nor Taulbee had a financial incentive to set the fire, since Barbara Strong

had conveyed her rights to the property.

Finally, Allstate had a reasonable basis for believing that Strong had an

opportunity to set the fire.  During his investigation of the fire, Detective Burnett

checked the doors on the home.  R. 38-13 at 5.  The front doors were locked, and

the firefighters told him that a lock on a doorknob leading to the utility room was

locked but the deadbolt was unlocked.  *Id.*  The firefighters unlocked the lock on

the doorknob before Burnett arrived.  *Id.*  According to Burnett's report, "[i]t

appear[ed] that both locks were locked during the fire."  *Id.*  Also, Strong testified

that the family typically used the utility room door, and that they usually did not

lock the deadbolt on that door.  R. 38-3 at 25.

Strong said he was in Northern Kentucky visiting his girlfriend, Wilma Turner,

at the time of the fire.  *Id.* at 23.  According to Strong, he left the house around

4:30 or 5:00 p.m. and locked all of the doors behind him.  *Id.*  If the doors were locked when Strong left and the firefighters found them locked when they arrived, it is reasonable to assume that only those persons with keys to the locks had an opportunity to start the fire.

Allstate hired Scott Griffin, a private investigator, to assist it in finding out who was responsible for causing the fire.  Griffin interviewed several persons with knowledge about the fire, including Detective Burnett.  According to Griffin, Burnett mentioned that Strong acted strangely when they first met after the fire.  R. 38-18 at 9.  Burnett told Griffin that, in his nearly thirty years of investigating fires, Strong was the first victim to show up with a lawyer at that initial meeting.  *Id.*  Burnett also noted that Strong frequently glanced at his attorney during the meeting and had trouble maintaining eye contact.  *Id.*  In addition, Strong appeared aggravated and was cursing.  R. 38-12 at 15.  Eventually, Burnett had to ask Strong's attorney to intervene because Strong was becoming argumentative.  *Id.* at 15-16.  In contrast to Strong's behavior, both Barbara Strong and Joshua Taulbee were cooperative with investigators and did not appear nervous.  *Id.* at 15; R. 38-18 at 7.

Allstate has presented sufficient evidence to support its belief that Strong had the opportunity to start the fire.  Allstate has shown that it had reasonable grounds to believe that the fire was of an incendiary origin and that Strong had both a motive and the opportunity to burn the house.  Thus, no genuine issue of

8

material fact exists to support Strong's claim that Allstate contested his claim in bad faith.

Not only does Strong have to prove the above-stated elements of bad faith, he must also show that the alleged bad faith is "of an outrageous nature" that is "sufficient for a jury to conclude that the insurer's intentional misconduct emanated from an evil motive or a reckless indifference to the rights of others." *Hamilton Mutual Ins. Co. of Cincinnati v. Buttery*, 220 S.W.3d 287, 294 (Ky. Ct. App. 2007). "Absent such evidence of egregious behavior, the tort claim predicated on bad faith may not proceed to a jury." *United States Automobile Ass'n v. Bult*, 183 S.W.3d 181, 186 (Ky. Ct. App. 2003).

In support of his "bad faith" claim, Strong alleged that "[t]he Plaintiff . . . has published to the general public that [he] is an arsonist." While representatives of Allstate asked certain individuals whether they thought Strong had burned down his home, they also asked the potential witnesses whether they started the fire. Allstate had a reasonable basis to suspect that Strong may have been involved in burning down the house. Thus, the questions were relevant to the investigation and do not show an "evil motive." Furthermore, nothing in the record indicates that Allstate's representatives ever stated that Strong was an arsonist; instead, they merely asked questions. Their questions cannot be considered "egregious," given the circumstances surrounding the fire. Thus, Strong has failed to produce "sufficient [evidence] for a jury to conclude that the insurer's intentional

misconduct emanated from an evil motive or a reckless indifference to the rights of others," and Allstate is entitled to a judgment as a matter of law.

### B. Other Motions Regarding Bad-Faith Claims

In light of the foregoing discussing, the court will deny as moot both the plaintiff's motion to exclude M. Austin Mehr, whom the defendant designated as his opinion witness on the bad-faith claim, and also the plaintiff's motion for an extension of time to disclose bad-faith opinion witnesses.

### C. Motion to Exclude Michael D. Miller

The plaintiff has moved to exclude the defendant's expert witness, Michael D. Miller, from testifying at trial because the defendant failed to comply with the Federal Rules of Civil Procedure and the court's amended scheduling order. That order required the defendant to disclose his opinion witnesses by October 1, 2008. While Strong met that deadline by timely furnishing Miller's name, he failed to provide Allstate with a written report from Miller. The scheduling order required such a report, as do the Federal Rules of Civil Procedure:

> Unless otherwise stipulated or ordered by the court, [the disclosure of opinion witnesses] must be accompanied by a written report – prepared and signed by the witness – if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony.

FED. R. CIV. P. 26(a)(2)(B).

"If a party fails to provide information or identify a witness as required by

10

Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." FED. R. CIV. P. 37(c)(1). "The sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless," *Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998), and the potentially sanctioned party bears the burden of proving harmlessness, *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003).

The defendant failed to comply with Rule 26(a) and the court's order, thus prompting the plaintiff's motion. In response to that motion, the defendant first stated merely that he had "never requested an extension of time for any other discovery." R. 29. The defendant did not provide any additional reasons for his failure to disclose reports for his two expert witnesses until almost two months later, when he filed an "additional response," in which he alleged serious medical conditions which include partial blindness and severe back problems. In that "additional response," the defendant also requested a 21-day extension of time within which to furnish Miller's report.

Despite the medical conditions of defense counsel, he timely filed the name of Miller, whose report could and should have been filed simultaneously with the provision of Miller's identity. It was the defendant's responsibility to secure and file the report. Yet the court will accept the defendant's medical arguments as

11

"substantially justif[ying]" his failure to furnish timely Miller's report, thus satisfying Rule 37(c)(1).  The defendant requested a 21-day extension on December 30, 2008, so he has had ample time to obtain Miller's report.  He is directed to supply that report to the plaintiff (but not file it in the record) at or before the pretrial conference of this case, on April 9, 2009.  Failure to furnish the report by that date will result in exclusion of the witness from the trial of this matter.

Given the late disclosure of Miller's report, the court will extend the time for the plaintiff to take Miller's deposition and will entertain, if appropriate, either a motion to continue the trial or a renewed motion to exclude Miller from testifying at trial, after the plaintiff reviews the Miller report for sufficiency.

## IV.    Conclusion

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment on the bad-faith counterclaim (R. 38) is **GRANTED**.

**IT IS FURTHER ORDERED** that the motion for extension (R. 31) and as much of the motion to exclude as relates to M. Austin Mehr (R. 28) are **DENIED AS MOOT** and the motion to exclude Michael D. Miller (R. 28) is **DENIED**.

Signed on  April 6, 2009

*Jennifer B.Coffman*

JENNIFER B. COFFMAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY